UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK WILK,

                Plaintiff,        Civil Action No. 18-13141
                                            Honorable Matthew F. Leitman
v.                                  Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 13]**

Plaintiff Mark Wilk ("Wilk") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #11, #13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Wilk is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **DENIED**, Wilk's Motion for Summary Judgment (**Doc. #11**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to

sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

## II. REPORT

### A. Procedural History

Wilk was 52 years old at the time of his alleged onset date of August 20, 2015, and at 6'2" tall weighed approximately 155-165 pounds during the relevant time period. (Tr. 29, 157, 171). He completed high school but had no further education. (Tr. 30, 172). He worked as a carpenter and a machine operator, but stopped working in August 2015 when he missed too much work, largely due to facial and head pain stemming from post-herpetic neuralgia. (Tr. 31-32, 161, 171-72). He now alleges disability primarily as a result of this condition, as well as knee pain, foot pain, and depression. (Tr. 38, 171).

After Wilk's application for DIB was denied at the initial level on April 8, 2016 (Tr. 66-73), he timely requested an administrative hearing, which was held on August 30, 2017, before ALJ Colleen Mamelka (Tr. 25-56). Wilk, who was represented by attorney Jessica Turkish, testified at the hearing, as did vocational expert John Stokes. (*Id.*). On December 28, 2017, the ALJ issued a written decision finding that Wilk was not disabled under the Act prior to his date last insured of March 31, 2016. (Tr. 15-20). On August 16, 2018, the Appeals Council denied review. (Tr. 1-5). Wilk timely filed for judicial review of the final decision on October 9, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Wilk's medical record, Function and Disability Reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make

references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Wilk was not disabled under the Act during the relevant period of time. At Step One, the ALJ found that Wilk did not engage in substantial gainful activity between his alleged onset date (August 20, 2015) and his date last insured (March 31, 2016). (Tr. 17). At Step Two, the ALJ found that, through the date last insured, Wilk had the medically determinable impairments of post-herpetic neuralgia, mild osteoarthritis of the bilateral knees, headaches, gastroesophageal reflux disease, dermatitis, dysphagia, and tobacco dependence. (Tr. 18). However, the ALJ found that none of Wilk's impairments, whether considered alone or in combination, were "severe," in that they did not significantly limit his ability to perform basic work-related activities for twelve consecutive months. (*Id.*). As a result, the ALJ concluded that Wilk was not disabled under the Act between August 20, 2015, and March 31, 2016. (Tr. 20).

C. **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a

determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health &*

5

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.     Analysis**

As set forth above, the ALJ found that Wilk has the medically determinable impairments of post-herpetic neuralgia, mild osteoarthritis of the bilateral knees, headaches, gastroesophageal reflux disease, dermatitis, dysphagia, and tobacco dependence. (Tr. 18). She then concluded that none of these impairments, alone or in combination, were severe within the meaning of the Act during the relevant time period. (*Id.*). On appeal, Wilk argues that the ALJ erred by not finding his head pain to be a severe impairment.[1] (Doc. #11 at 13-19).

At Step Two of the sequential evaluation process, the ALJ must determine whether a claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled,' as defined by the Act …." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007). The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 404.1520(c). Basic work activities are defined in the regulations as "the abilities and

---

[1] Wilk raises other arguments before this Court. For example, he argues that the ALJ erred in finding his knee and foot impairments non-severe. (Doc. #11 at 16). And, citing *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018), Wilk argues that the adjudication of his claim for DIB was unconstitutional because his administrative hearing was presided over by an ALJ who was not properly appointed under the Appointments Clause of the Constitution. (*Id.* at 20-27). Because the Court is recommending remand on other grounds, it need not consider the merits of these arguments.

aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See id.*

As Wilk correctly points out, the Sixth Circuit has "characterized step two of the disability determination process as a '*de minimis* hurdle.'" *Despins*, 257 F. App'x at 929. The inquiry at Step Two functions as an "administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 n. 1 (6th Cir. 1985)). Thus, an impairment can be considered not severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* at 862. Under this standard, then, the question is "whether there is substantial evidence in the record supporting the ALJ's finding that [Wilk] has only a 'slight' impairment that does not affect [his] ability to work." *Farris*, 773 F.2d at 90.

The medical evidence indicates that Wilk began treating with a neurologist, David Green, D.O., for head pain caused by post-herpetic neuralgia[2] in January 2006. (Tr. 238). As the ALJ noted, in February 2015, Wilk developed a vesicular rash over the trigeminal nerve distribution that was "crusted" and causing "excruciating" pain. (Tr. 308). Dr.

---

[2] Apparently, Wilk experienced "a case of shingles involving the upper branch of the parietal trigeminal nerve" in about 1993, after which he was left with post-herpetic neuralgia. (Tr. 270).

7

Green noted that although the rash had been "slowly resolving," Wilk's pain was "undiminished," despite Valtrex, Neurontin, and narcotic pain medications. (*Id.*). By August 2015, the rash had resolved, but the pain remained severe, especially in the afternoon. (Tr. 311). Wilk reported forgetting to take MS Contin at times (or taking it late), and Dr. Green emphasized the need to take this pain medication at specific intervals. (Tr. 311-12). He also switched Wilk from OxyIR to Norco for breakthrough pain. (Tr. 312).

In March 2016, Wilk's pain was "relatively well controlled" with the combination of MS Contin, Norco, and Neurontin. (Tr. 394). But, at his next visit to Dr. Green, in September 2016, Wilk's pain was described as "poorly controlled" on these three medications, and his Norco dose was increased. (Tr. 391-92). At that time, Wilk was advised to return in six months; only three months later, however, he returned to see Dr. Green with "poorly controlled" facial pain that was interfering with his sleep and causing increased depression. (Tr. 388). Dr. Green switched Wilk back to OxyIR for breakthrough pain and increased the Prozac dose he had previously been prescribed (no later than March 17, 2016).[3] (Tr. 389, 394).

On September 13, 2017, after the administrative hearing[4] in this case, Wilk provided an opinion from Dr. Green, which stated, in its entirety:

---

[3] Despite this, the ALJ wrote, "[a]lthough [Wilk] alleges a mental impairment, there was no treatment for any mental impairment prior to [his] date last insured." (Tr. 19).
[4] At the August 30, 2017 hearing, Wilk testified that, despite taking multiple narcotic medications, he still experienced daily left-sided head pain that ranged from 4 to 8 on the 10-point scale, and occurred 3-4 times an hour, for 1-3 minutes at a time. (Tr. 39, 46). Moreover, Wilk indicated that, even with medication, he still had at least one "bad day" per week in which he would wake up with "a lot" of left-sided head pain and would not even want to get up. (Tr. 46).

> Mr. Wilk's daily chronic head pain (multiple episodes per hour, averaging 2-3 minutes per episode) is supported by his diagnosis of post-herpetic neuralgia.
>
> Mr. Wilk's pain remains severe, despite a regiment of strong pain medications.
>
> Mr. Wilk experiences chronic fatigue as a result of his medical condition and side-effects of pain medications.

(Tr. 397).

In evaluating the severity of Wilk's head pain, the ALJ stated:

> The record shows a history of post-herpetic neuralgia with his pain being reasonably well controlled on medication. Additionally, the pain was not consistent or consistent through the whole day. The pain followed the left trigeminal nerve distribution. At times, [Wilk] did have a vesicular rash over the V1 distribution left trigeminal nerve. Following a February 2015 rash, [Wilk] continued to complain of pain, which was worse in the afternoon. He was not taking his medication consistently.

(Tr. 19) (citations omitted). The ALJ's analysis is not supported by substantial evidence. It is true that, on one occasion, in March 2016, Wilk's head pain was described as "relatively well controlled" with the combination of MS Contin, Norco, and Neurontin.[5] (Tr. 394). At several other visits to Dr. Green during the relevant time period, however, the exact opposite was true. (*E.g.*, Tr. 308 ("excruciating" pain in February 2015), 311 (pain still "severe" in August 2015), 391 (pain "poorly controlled" on MS Contin, Norco, and Neurontin in September 2016), 388 ("poorly controlled" pain in December 2016)). The ALJ made no mention of this evidence in her written decision. Similarly, although the ALJ discounted Wilk's allegations of pain in part because he "was not taking his

---

[5] The record actually cited by the ALJ for the proposition that Wilk's head pain was "reasonably well controlled on medication" is actually from January *2006*, some nine years prior to the relevant time period. (Tr. 19 (citing Tr. 238)).

9

medication consistently" (Tr. 19), she cited only one report from a single office visit, in which Dr. Green actually noted that Wilk had been inconsistent with the timing of his three daily doses of MS Contin (Tr. 311). But, other treatment notes from 2015 and 2016 include no discussion of such non-compliance with medication or variation in the timing of his doses. (Tr. 388-95).

Additionally, in finding Wilk's head pain non-severe, the ALJ gave "little weight" to the only treating physician opinion in the record – that of Dr. Green, who opined that Wilk suffered severe, chronic head pain, despite a regimen of strong pain medications, as well as chronic fatigue caused by the side effects of these medications.[6] (Tr. 20, 397). The well-established treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378

---

[6] It bears mentioning that the record contains the April 7, 2016 opinion of state agency physician Quan Nguyen, M.D., who concluded that Wilk suffered from a severe impairment, characterized as "other disorders of the nervous system." (Tr. 61). The ALJ did not mention Dr. Nguyen's opinion in her decision.

F.3d 541, 544 (6th Cir. 2004)).

Here, the ALJ discounted the opinion of Wilk's treating neurologist, Dr. Green, because it "was issued well after [Wilk's] date last insured and the record does not support that the opinion was longitudinal." (Tr. 20). This analysis is problematic in a few respects. To begin with, while it does appear that Dr. Green's opinion was issued more than one year after Wilk's date last insured, courts have recognized that "medical evidence that postdates the insured status date may be, and ought to be, considered, insofar as it bears on the claimant's condition prior to the expiration of insured status." *Anderson v. Comm'r of Soc. Sec.*, 440 F. Supp. 2d 696, 699 (E.D. Mich. 2006). The ALJ failed to perform this analysis here. Moreover, the ALJ's statement that Dr. Green's opinion was not "longitudinal" is at odds with the evidence that Dr. Green treated Wilk over a ten-plus year period, and the fact that his opinion appears consistent with his treatment notes from 2015 and 2016. Thus, the ALJ's decision to give little weight to the opinion of Dr. Green regarding the severity of Wilk's condition is not supported by substantial evidence. *Cf. Little v. Comm'r of Soc. Sec.*, No. 16-11968, 2017 WL 4276968, at *4 (E.D. Mich. Sept. 27, 2017) (finding that a "purely retrospective opinion" from a treating physician "who did not treat the claimant during the time period in question" was not entitled to any particular deference).

Given all of these facts, the Court cannot conclude that the ALJ's Step Two finding that Wilk's head pain was non-severe is supported by substantial evidence. Indeed, the evidence suggests just the opposite – namely, that Wilk's head pain, which was not consistently well-controlled even with multiple "strong" pain medications, was

11

sufficiently severe to satisfy the "*de minimis* hurdle" posed at Step Two of the sequential analysis. Although Wilk's impairments might ultimately be deemed non-disabling during the relevant time period, that determination can only properly be made after a more complete application of the five-step sequential analysis.[7] The record in this case suggests that Wilk is not presenting a "totally groundless" claim from a medical standpoint, *Higgs*, 880 F.2d at 863, and accordingly, remand is warranted.

### III. CONCLUSION

For these reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **DENIED**, Wilk's Motion for Summary Judgment (**Doc. #11**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

Dated: August 13, 2019  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

---

[7] The Commissioner also argues that even if the ALJ erred in finding Wilk's impairments non-severe at Step Two, such an error is not prejudicial because she made an alternate finding that *if* she were to find that Wilk could perform a reduced range of light work, she would then find that he could perform "three occupations totaling 77,000 jobs nationally." (Doc. #13 at 11-12 (citing Tr. 20)). The problem, however, is that the ALJ did not actually conduct a residual functional capacity analysis or otherwise explain why she might find Wilk capable of performing certain light work.

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 13, 2019.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager
